1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7              FOR THE EASTERN DISTRICT OF CALIFORNIA

8

SAENG SEE,                                    CASE NO. 1:05-cv-0298 AWI TAG

9
                    Plaintiff,                FINDINGS AND RECOMMENDATIONS
10                                             ON PLAINTIFF'S APPEAL FROM
      vs.                                      ADMINISTRATIVE DECISION
11
MICHAEL J. ASTRUE,[1]
12 Commissioner of Social Security,

13                  Defendant.

14 _____/

15        Plaintiff Saeng See ("Claimant") seeks judicial review of an administrative decision denying his

16 claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"),

17 42 U.S.C. § 1381 et seq.   (Doc. 1).   Pending before the Court is Claimant's appeal from the

18 administrative decision of the Commissioner of Social Security ("Commissioner").   Claimant filed his

19 complaint on February 25, 2005 (Doc. 1), and his opening brief on January 17, 2006. (Doc. 20).   The

20 Commissioner filed his opposing brief on February 15, 2006.  (Doc. 22).   Claimant did not file a reply

21 brief.

22                              **JURISDICTION**

23        On May 23, 2002, Claimant protectively filed an SSI worksheet[2] alleging an onset date of April

24

25 _____

26 [1]  Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social
   Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

27 [2]  To qualify as an effective supplemental security income claim, an application for benefits must be submitted
   on a prescribed form. 20 C.F.R. § 416.305.  However, a written statement indicating a person's intent to claim benefits
28 can, if certain coincident and subsequent requirements are met, establish a protective filing date. 20 C.F.R. § 416.340.

1

12, 2002.[3]  (Administrative Record "AR" 63-64).  Claimant filed his application on June 10, 2002. (AR 58-62).  Claimant's application was denied initially and on reconsideration.  (AR 29, 45-48, 39, 50-53).  After timely requesting a hearing, Claimant and his counsel appeared before Administrative Law Judge ("ALJ") Bert Hoffman, Jr., on November 18, 2003.  (AR 54, 240-256).  On January 13, 2004, the ALJ issued a written decision finding that Claimant was not disabled for purposes of SSI.  (AR 13-19). The Appeals Council denied Claimant's request for review on December 27, 2004.  (AR 5-6).  The Appeals Council's decision, therefore, became the final decision of the Commissioner, which is appealable to the district court.  42 U.S.C. § 405(g).  The initiation of an appeal in the district court must be commenced within sixty (60) days of the Appeal Council's decision.  Id.  On February 25, 2005, Claimant timely filed this action.  (Doc. 1).

### STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcripts, the ALJ's decision, and the briefs filed by Claimant and the Commissioner, and, therefore, will only be summarized here.  In his SSI paperwork, Claimant alleged an inability to work due to "major severe stomach pain, chest pain, dizziness, headaches, poor concentration, poor memory problem, severe stress disorder, restricted fraustrated (sic), major depression and post anxiety disorder."  (AR 66).  Claimant also mentioned that he had asthma.  (AR 82).

At the administrative hearing, Claimant, represented by counsel, testified through a Lahu interpreter.  (AR 242).  Claimant testified that he was born on June 15, 1951, making him 52 years old at the time of ALJ Hoffman's decision, and  had attended two years of English classes since arriving from Laos, but he spoke only enough English to shop and could not read sentences.  (AR 244, 246-267). He  stated that he lived with his mother and father, his wife, and his four children, two of whom were disabled.  (AR 245).

Regarding his work, Claimant testified that he worked for three years at Home Town Buffet as a dishwasher, busboy, and cleaned, but he had to stop working in October 2002 because he was dizzy

---

[3]  In his SSI application, Claimant alleges that he became disabled on April 5, 2002.  (AR 58).  On his Social Security Administration ("SSA") paperwork, Claimant reports that he could no longer work as of  April 15, 2002, which also was his last day of work.  (AR 66).  The SSA recommended an onset date of May 23, 2002, as that was the date he protectively filed his SSI application.  (AR 75).

and had stomach pain.  (AR 246, 251).  When he left the restaurant, his boss told him to get some rest and return the next day, but Claimant did not go back because he was sick.  (AR 251).  He added that his previous job had been building houses through a government project, which he left due to pain and dizziness following a work-related injury.  (AR 246).  Claimant testified that he always feels dizzy, and the prescription medication only helped initially.  (AR 252).  His doctor informed him that he also had an ear infection.  (AR 252).  As to his stomach pain, Claimant stated that he suffers severe pain two or three times for thirty minutes, adding that he believes the underlying cause of the pain is attributable to his hard work at the restaurant.  (AR 253).  Claimant further testified that he has difficulty breathing, especially when he has his bouts of stomach pain.  (AR 254).  Claimant denied any adverse side effects from his medications.  (AR 253).

With respect to his daily activities, Claimant testified that, because of his chronic dizziness, he does no housework and spends most of the day on or in his bed.  (AR 248, 251-252).  He added that he does not know how many hours he lays down, because he also has to move around.  (AR 253).  Claimant further testified that he drives his children to their three separate schools, and sometimes stops at the store, in one trip.  (AR 248-250).  When he feels well, he will drive to church and to the flea market.  (AR 250).

**RELEVANT LEGAL FRAMEWORK**

To qualify as disabled under Title XVI of the Act, an applicant for SSI benefits must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision.  <u>See</u> 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when

3

1  the determination is not based on legal error and is supported by substantial evidence. See Jones v.

2  Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812 F.2d

3  509, 510 (9th Cir. 1987).  "The [Commissioner's] determination that a claimant is not disabled will be

4  upheld if the findings of fact are supported by substantial evidence." Delgado v. Heckler, 722 F.2d 570,

5  572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla,

6  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.

7  McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and

8  Human Services, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a

9  reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S.

10  389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may

11  reasonably draw from the evidence" will also be upheld.  Mark v. Celebrezze, 348 F.2d 289, 293 (9th

12  Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting

13  the decision of the Commissioner.  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quoting

14  Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

15      It is the role of the trier of fact, not the court, to resolve conflicts in evidence. Richardson, 402

16  U.S. at 400.  If evidence supports more than one rational interpretation, the court must uphold the

17  decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Moreover, if there is

18  substantial evidence to support the administrative findings, or if there is conflicting evidence that will

19  support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.

20  Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by

21  substantial evidence will still be set aside if the proper legal standards were not applied in weighing the

22  evidence and making the decision.  Brawner v. Secretary of Health and Human Services, 839 F.2d 432,

23  433 (9th Cir. 1987).

24          **SEQUENTIAL EVALUATION PROCESS**

25      The Commissioner has established a five-step sequential evaluation process for determining

26  whether a person is disabled under Title XVI of the Act.  20 C.F.R. § 416.920.  Step one determines if

27  he is engaged in substantial gainful activities.  If he is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(I),

28  (b).  If he is not, the decision maker proceeds to step two, which determines whether the claimant has

4

1  a medically severe impairment or combination of impairments that meet the duration requirements set

2  forth in 20 C.F.R. § 416.909; i.e. the impairment(s) are expected to result in death, or continuously lasted

3  or be expected to last at least twelve months.  20 C.F.R. § 416.920a(4)(ii), (c).  If the claimant does not

4  have a severe impairment, a combination of impairments, or meet the duration requirement, the disability

5  claim is denied.  Id.

6       If the impairment is severe, the evaluation proceeds to the third step, which compares the

7  claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be

8  so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 416.920(a)(4)(iii), (d);  20 C.F.R. Pt.

9  404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments and satisfies the

10  duration requirement, the claimant is conclusively presumed to be disabled.  20 C.F.R. §§ 416.909,

11  416.920(a)(4)(iii), (d).   If the impairment is not one conclusively presumed to be disabling, the

12  evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant

13  from doing work performed in the past. If the claimant is able to perform his previous work, he is not

14  disabled. 20 C.F.R. §§ 416.920(a)(4)(iv), (e); 416.960(b).  If the claimant cannot perform this work, the

15  fifth and final step in the process determines whether he is able to perform other work in the national

16  economy in view of his age, education and work experience.  20 C.F.R. §§ 416.920(a)(4)(v), (f) and (g);

17  416.960(b) and (c).  See Bowen v. Yuckert, 482 U.S. 137 (1987).

18       The initial burden of proof rests upon a claimant to establish that he "is entitled to the  benefits

19  claimed under the Act."  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971) (citations omitted).  In

20  terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof

21  is on the claimant as to steps one to four," while at the same time noting that an ALJ's *affirmative duty*

22  *to assist a claimant to develop the record . . . complicates the allocation of burdens* such that "the ALJ

23  shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999) (italics in

24  original).  The initial burden is met once a claimant establishes that a physical or mental impairment

25  prevents him from engaging in his previous occupation.  The burden then shifts to the Commissioner

26  to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant

27  number of jobs exist in the national economy" which claimant can perform.  Kail v. Heckler, 722 F.2d

28  1496, 1498 (9th Cir. 1984).

### ALJ'S FINDINGS

The ALJ found, at step one, that Claimant had not engaged in substantial gainful activity since he filed his SSI application on May 23, 2002.  (AR 16, 18).  At step two, the ALJ determined that Claimant has the following severe impairments: "residuals from abdominal surgery, asthma and  a depressive disorder not otherwise specified." (AR 16, 18).  At step three, the ALJ found that Claimant's impairments, singly or in combination, did not meet or medically equal those listed in Appendix 1, Subpart P, Regulations No. 4.  (AR 16, 18).  The ALJ then determined that Claimant retained the residual functional capacity ("RFC") to do medium work, provided that the job does not require exposure to pulmonary irritants. (AR 17, 19).  ALJ Hoffman noted that Claimant's busboy/dishwasher job was within Claimant's RFC, according to the Dictionary of Occupational Titles,[4] and, accordingly, at step four he found that Claimant was capable of returning to his past relevant work.  (AR 17-19).  The ALJ further concluded that extent of Claimant's symptoms and limitations were as severe as he asserted in his testimony, and discussed the medical evidence and Claimant's activities in support of his finding that Claimant's testimony was not entirely credible. (AR 17-19).  Because the ALJ found that Claimant could return to his past job, he determined  that Claimant was not disabled and, therefore, not eligible for benefits under 20 CFR § 416.920(g).  (AR 17-20).

### ISSUES

Claimant's Opening Brief raised the following issues for consideration:

A.  The ALJ failed to develop the record as to Claimant's mental health;

B.  The ALJ erred by rejecting the treating physician's records without providing an adequate explanation;

C.  The ALJ improperly assessed Claimant's testimony; and

D.  The ALJ did not considered the requirements of, and Claimant's ability to perform, his past relevant work

This Court must uphold the Commissioner's determination that Claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

---

[4]  The ALJ used the Dictionary of Occupational Title's number 311.677-018, which is entitled "DINING ROOM ATTENDANT," or, alternatively, "Bus Person."

**DISCUSSION**

As an initial matter, Claimant includes new evidence in his opening brief that he contends warrants a remand for further administrative proceedings.  (Doc. 20, p.5; see Doc. 20-3).  The new evidence consists of an evaluation of Claimant's psychological condition and mental functionality as requested by Claimant's attorney.  (Doc. 20-3, p. 1).  The report was prepared by two students enrolled at the California School of Professional Psychology, under the supervision of psychologist David Bruce Rose, Ph.D., who had Claimant undergo various interviews and tests.  (Doc. 20-3).  The evaluation did not specifically mention whether Claimant would be able to work, but stated, inter alia, that he suffered from dementia, major depressive disorder, post traumatic stress disorder, multiple physical ailments, suicidal ideation, and the inability to socialize or care for himself.  (Id.).

Title 42, section 405(g) of the United States Code provides for remand when there is new evidence that is material and good cause exists for the claimant's failure to incorporate the evidence in a prior proceeding.  Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir. 1984).  To demonstrate good cause, the claimant must demonstrate that the new evidence was not available until after the Commissioner's final decision, and the claimant could not have obtained that evidence at the time of the administrative proceedings.  Mayes v. Massanari, 276 F.3d 453, 463 (9th Cir. 2001); Booz v. Sec'y of Health and Human Services, 734 F.2d 1378, 1380 (9th Cir. 1984). To meet the materiality requirement, the new evidence must bear directly and substantially on the matter in dispute.  Mayes, 276 F.3d at 462.  In addition, the claimant must show that there is a "reasonable possibility that the new evidence would have changed the outcome of the administrative hearing."  Id.

In the instant case, Claimant did not obtain or introduce the evaluation from the California School of Professional Psychology during the administrative proceedings, including when he sought review, which the Appeals Council denied on December 27, 2004.  (AR 5-6; see generally AR).  Claimant, however, offers no explanation why he had not solicited this assessment earlier, despite his awareness that he suffered emotional problems, other than his argument, discussed below, that the ALJ failed to further develop the record.  (Doc. 20, pp. 4-5).  The logical explanation is that, when Claimant failed to succeed on his SSI claim at the agency level, he sought out a new expert witness who might better support his position.  The "good cause" requirement would "be meaningless if such circumstances

1   were sufficient to allow introduction of new evidence." <u>Allen v. Sec'y of Health and Human Serv.</u>, 726

2   F.2d 1470, 1473 (9th Cir. 1984).  Because has not established good cause for failing to submit the new

3   evidence during the administrative proceedings, the question of the materiality of said evidence is moot.

4         Since Claimant fails to meet the "good cause" requirement, the undersigned declines to consider

5   the new evidence, or remand the case based on it.  Claimant is, however, free to file a new application

6   for benefits that includes the new evidence. New evidence that indicates a recent deterioration of a

7   condition may support a new application for benefits, but it does not meet the standard for a new

8   evidence remand.  <u>See</u> <u>Ward v. Schweiker</u>, 686 F.2d 762, 764-765 (9th Cir. 1982) (addressing the

9   admissibility of new evidence based on materiality, after good cause has been found to exist).

10         **A.   Failure to Develop the Record**

11         Claimant asserts that the ALJ should have further developed the record as it pertained to his

12   mental health.  He contends that the psychological evaluation prepared by examining consultant Charles

13   House, Ph.D., was not based on psychological testing and the ALJ was obligated to clarify Dr. House's

14   abilities in light of Claimant's mental impairments.  (Doc. 20, p. 4).

15         In a Social Security case, an ALJ is obligated to fully and fairly develop the record even if the

16   claimant is represented by counsel.  <u>Celaya v. Halter</u>, 332 F.3d 1177, 1183 (9th Cir. 2003).  There is a

17   heightened duty where the claimant is suffering from a mental condition because mental claimants may

18   not be able to protect themselves from loss of benefits by producing evidence.  <u>DeLorme v. Sullivan</u>,

19   924 F.2d 841, 849 (9th Cir. 1991).  An ALJ's duty to develop the record is further triggered when there

20   is ambiguous evidence or when "the record is inadequate to allow for proper evaluation of the evidence."

21   <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-460 (9th Cir. 2001); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150

22   (9th Cir. 2001).  This duty may require that the ALJ obtain additional information by, <u>inter</u> <u>alia</u>,

23   contacting treating physicians, scheduling consultative examinations, or calling a medical expert.

24   20 C.F.R. §§ 416.912(e)-(f), 416.919a.

25         In the instant case, Claimant started seeing psychiatrist Maximo Parayno, Jr., M.D., in May 2002

26   and continued under his care until at least July 2003.  (AR 227-234).  Although, in his decision, the ALJ

27   adopted the opinion of consulting psychologist Charles House, Ph.D., who concluded that Claimant's

28   mental impairments would not affect his ability to perform simple work, Dr. Parayno had opined that,

as of July 20, 2002, Claimant could not work and deferred for six months making a decision concerning

whether or when Claimant would be able to work or join an educational training program.  (AR 17-18,

161, 167-172).  As discussed in Section B, both Drs. Parayno and House relied on subjective and

objective data, and neither had Claimant undergo any formal psychological testing.  (See AR 167-172,

227-234).

As reaffirmed recently by the Ninth Circuit, a treating physician's opinion generally is given

controlling weight, or significant deference, because of his familiarity with a claimant's condition.  Orn

v. Astrue, __ F.3d __, 2007 WL 2034287, *5-6 (9th Cir. 2007); Lester v. Chater, 81 F.3d 821, 830 (9th

Cir. 1996); Social Security Ruling ("SSR") 96-2p. In light of the fact that Claimant's treating

psychiatrist, whose opinion was, at a minimum, entitled to deference, reported that he could not render

an opinion as to Claimant's ability to work until at least January 2003, the record was not complete and

adequate as to Claimant's mental health without an updated opinion from Dr. Parayno. Mayes, 276 F.3d

at 459-460.  The ALJ. therefore, erred in failing to recontact Claimant's treating psychiatrist to further

develop the record before the November 18, 2003 administrative hearing.  Accordingly, the undersigned

recommends that this case be remanded for further development of Claimant's mental impairments and

associated limitations.

**B.   Rejection of Treating Physicians without Sufficient and Adequate Explanations**

Claimant asserts that the ALJ erred when he rejecting the opinions of Claimant's treating

physicians – Drs. Sunio, Zeismer, and Paranyo – with providing any explanation, much less the requisite

clear and convincing reasons based on substantial evidence.  (Doc. 20, pp. 5-6).

The opinions of treating doctors should be given more weight than the opinions of doctors who

do not treat the claimant. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998); Lester v. Chater, 81 F.3d

821, 830 (9th Cir.1995).  Where the treating doctor's opinion is not contradicted by another doctor, it

may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.

Id. at 830.  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject

this opinion without providing "specific and legitimate reasons" supported by substantial evidence in

the record.  Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by the

ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating

9

his interpretation thereof, and making findings. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctor's, are correct.  <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-422 (9th Cir.1988).

In <u>Orn v. Astrue</u>, ___F.3d ___, 2007 WL 2034287 (9th Cir. July 16, 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion of an examining physician over that of a treating physician.  "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence.  <u>Orn</u>, 2007 WL 2034287, *5 (citation and quotation omitted).  "By contrast, when an examining physician provides independent clinical findings that differ from the findings of the treating physician, such findings are substantial evidence."  <u>Id.</u> (citation omitted).  "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and are supported by substantial evidence . . . or (2) findings based on objective medical tests that the treating physician has not herself considered."  <u>Id.</u> (citations omitted).

If there is "substantial evidence" in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to "controlling weight."  20 C.F.R. § 404.1527(d)(2).  In that event, the ALJ is instructed by § 404.1527(d)(2) to consider the factors listed in § 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician.  Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician.  20 C.F.R. § 404.1527(d)(2)(i)-(ii).  Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference."  SSR 96-2p; <u>Orn</u> at *6.  "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."  <u>Id.</u>

In the instant case, Drs. Gilbert Sunio and Arthur Zeismer, Jr. treated Claimant for his physical

10

1  problems from September 1999[5] through August 2003 at Visalia Health Center.  (See generally AR

2  205-226).  Dr. Sunio had Claimant undergo several diagnostic tests in an attempt to ascertain the

3  underlying causes of his constant dizziness and chronic abdominal pain.  Dr. Sunio also treated Claimant

4  for osteoarthritis, which manifested itself as joint and back pain, bronchial asthma, and insomnia.  (See

5  generally AR 205-226).

6          On July 16, 2003, Dr. Sunio completed a questionnaire, in which he was asked to assess

7  Claimant's RFC.  (AR 201-202).  Dr. Sunio opined that Claimant had been disabled since 2002.

8  (AR 2002).  He reported that Claimant's physical ailments – primarily his abdominal tenderness –

9  prevented him from performing any work, even at the sedentary level. (AR 201).  Dr. Sunio stated that,

10  during an eight-hour day, Claimant could sit, stand, and/or walk for two-to-four hours, and had to lie

11  down and/or elevate his legs for the same amount of time.  (Id.).  He added that, because Claimant

12  became dizzy when he changed positions,  he would have additional work limitations. (Id.).  On October

13  31, 2003, Dr. Zeismer completed a Complete Medical Report and a check-the-box RFC assessment

14  based on his treatment of Claimant on Augustt 18, 2003.  (AR 235-239).  Dr. Zeismer reported that

15  Claimant suffered from asthma and headaches, and his wheezing was treated with an inhaler.  According

16  to Dr. Zeismer, Claimant's prognosis was fair. (AR 235).  With respect to Claimant's RFC, Dr. Zeismer

17  indicated that Claimant could lift and/or carry ten pounds frequently and twenty pounds occasionally;

18  sit two hours without a break or four hours total; stand, walk, lay down, and elevate one hour without

19  interruptions and two hours total; had no restrictions with respect to his hands; and occasionally could

20  climb, balance, stoop, crouch, kneel, and/or crawl due to his asthma and wheezing.  (AR 236-239).

21          The examining consultant, Tomas Rios, M.D., submitted a report based on a review of the then-

22  available records and his August 13, 2002, physical examination of Claimant.  (AR 162-166).  Dr. Rios

23  noted that Claimant drove and was independent in the activities of daily living, although he lived with

24  his family.  (AR 162).  He stated that Claimant complained of asthma and abdominal pain, and Dr. Rios'

25

26          [5]  The records from Visalia Health Center indicate that Dr. Sunio treated Claimant from September 1999
        through July 15, 2003.  (AR 205-26).  Dr. Zeismer saw Claimant only once, on August 18, 2003, and that medical record
27      apparently was lost or inadvertently excluded from the administrative record.  (See generally AR).  Given that Dr.
        Zeismer treated Claimant only once, his assessment must based on Claimant's August 18, 2003, visit, previous treatment
28      records and/or Dr. Zeismer's observations while Dr. Sunio treated Claimant .  (AR 236-239).

1  examination of Claimant revealed that he had some wheezing and an extensive surgical scar on his

2  abdomen that appeared to have formed into a keloid.  (AR 162-164).  Dr. Rios added that Claimant had

3  tenderness on palpitation at the surgical site.  (AR 163).  He diagnosed Claimant as suffering from

4  asthma, which was controlled by using an inhaler, and "status post abdominal surgery for a possible

5  small bowel obstruction," by which Dr. Rios was referring to the surgery Claimant underwent while

6  living in "Thailand."[6]  (AR 162-165).  Dr. Rios performed a pulmonary function test with normal results,

7  and, accordingly, concluded that Claimant could work as long as it did not involve exposure to

8  pulmonary irritants in an inside environment.  (AR 164, 166).  He also determined that, due to the

9  residuals from Claimant's abdominal surgery, he could not frequently bend and stoop, and should not

10  life more than fifty pounds occasionally or twenty-five pounds frequently.  (AR 165).  Dr. Rios made

11  no reference to Claimant's alleged dizziness.   (AR 162-166).

12      With respect to Claimant's physical abilities, the ALJ relied on the assessment of the examining

13  consultant, Dr. Rios, over those of Claimant's treating physicians.  (AR 17).  The ALJ explained that

14  he gave less weight to the treating physician's assessments because (1) the clinical findings and

15  diagnostic tests did not support Dr. Sunio's opinion, and (2) Dr. Zeismer's assessment was based solely

16  on Claimant's subjective claimant.  (Id.).  The ALJ, however, merely summarized Dr. Rios's report and

17  adopted it.  (Id.).  Assuming, without deciding, that the clinical evidence did not support the limitations

18  reported in the treating physician's opinions, the ALJ nonetheless erred because he failed  (1) to provide

19  specific, legitimate reasons supported by substantial evidence for rejecting their opinions, and (2) to

20  explain the rationale for according them the deference he did.  Orn, __ F.3d __, 2007 WL 2034287 (9th

21  Cir. 2007) (quotations and citations omitted).

22      Regarding the July 20, 2002, opinion of Claimant's treating psychiatrist, Maximo A. Parayno,

23  Jr., M.D.,  the ALJ stated that he gave "little weight to [it] because it is vague and not supported by any

24  medical evidence."  (AR 17).  The ALJ noted that Claimant saw Dr. Parayno every other month and only

25  for management of his psychotropic medication, yet Dr. Parayno opined that Claimant could not work

26

27      [6]  Claimant arrived in the United States on or about December 1994.  (AR 58).  He, therefore, underwent
     surgery in his former country no later than December 1994 – approximately eight years before Dr. Rios examined him in
28   August 2002.  (AR 162).

or take part in an educational training program because of his post-traumatic stress disorder ("PTSD") and major depressive disorder. (AR 17). In fact, Dr. Parayno stated that Claimant had a chronic, medically verifiable condition with an unknown onset date that would limit him from doing certain tasks and further chose to defer for six months rendering a decision as to whether Claimant would be able to work or participate in a training program. (AR 161). In addition, the medical records submitted by Dr. Parayno contain Claimant's subjective complaints, the doctor's objective observations, and prescribed medications from May 13, 2002 through July 25, 2003. (See AR 227-234). The ALJ, however, adopted the diagnosis and the non-exertional RFC assessment of consulting psychologist Charles House, Ph.D., without providing any reason why Dr. House's report was more accurate or how it was supported by medical evidence. (AR 18). Dr. House, in fact, did not perform any standard psychological tests because of the language barrier, and, while his diagnosis is different, his evaluation is almost identical with respect to Claimant's mental health on a subjective and objective basis as are Dr. Parayno's records. (See AR 167-172, 227-234). Again, the ALJ's reasons for rejecting Dr. Parayno's opinion do not comply with the applicable laws requiring that he provide reasons, based on substantial evidence, for not crediting the treating physician's opinion or deferring to it. Orn, ___ F.3d at ___, 2007 WL 2034287.

Because the ALJ did not comply with the applicable laws, regulations, and Social Security Rulings when he both rejected the opinions of Claimant's treating physician without the requisite explanation and neglected to explain the reasons for the level of deference that he accorded them, a remand is warranted.

### C. Claimant's Testimony and Third Party Questionnaire

Claimant contends that the ALJ committed legal error when he found that his subjective testimony concerning his pain and limitations was not credible without providing adequate reasons for discounting the testimony, as required under Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991)(en banc). Claimant further contends that the ALJ erred in making this finding without considering both Claimant's and his niece's "documentary representations." (Doc. 20, pp. 6-7).

Claimant's Testimony

Claimant asserts that the ALJ erred when he summarized Claimant's testimony in three lines, and used one line to explain why he rejected the testimony. (Doc. 20, p. 6). Claimant further contends

1  that the ALJ failed to comply with this Circuit's caselaw when he failed to provide specific and

2  convincing reasons and consider delineated factors to assess and discount Claimant's credibility.  (Id.

3  at 7), referencing Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); Bunnell, 947 F.2d at 346.

4      A two step analysis applies at the administrative level when considering a claimant's subjective

5  credibility.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the claimant must produce

6  objective medical evidence of an impairment and show that the impairment could reasonably be

7  expected to produce some degree of symptom.  Id. at 1281-1282.  If claimant satisfies this test – and if

8  there is no evidence of malingering – the ALJ can reject the claimant's testimony about the severity of

9  his or her symptoms "only by offering specific, clear and convincing reasons for doing so."  Id. at 1281.

10  Such specificity is crucial so as to enable effective judicial review.  See Mersman v. Halter, 161 F. Supp.

11  2d 1078, 1086 (N.D. Cal. 2001)("The lack of specific, clear, and convincing reasons why Plaintiff's

12  testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion

13  is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to

14  make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the

15  individual's statements and reasons for that weight").  Thus, an ALJ's decision "must identify what

16  testimony is not credible and what evidence undermines the claimant's complaints."  Lester v. Chater,

17  81 F.3d 821, 835 (9th Cir. 1995).  Grounds for an adverse credibility finding include, but are not limited

18  to, inconsistencies either in the claimant's testimony or between the claimant's testimony and conduct,

19  the claimant's daily activities and work record, the location, duration, frequency, and intensity of the

20  claimant's pain or other symptoms, testimony from physicians and third parties concerning the nature,

21  severity, and effect of the symptoms of which the claimant complains, and the lack of adequate

22  explanation for a claimant's failure to follow a prescribed course of treatment.  See Light v. Social Sec.

23  Admin., 119 F.3d 789, 792 (9th Cir. 1997); SSR 96-7p.

24      Here, the ALJ briefly discussed the medical evidence and Claimant's testimony in the context

25  of assessing the severity of Claimant's impairments and residual functioning capacity. (AR 16-17).  ALJ

26  Hoffman found that Claimant had "residuals from abdominal surgery, asthma and a depressive disorder

27  not otherwise specified."  (Id.).  The ALJ noted that Claimant refused to under exploratory laparotomy,

28  which was suggested as a diagnostic tool.  (Id. at 17).  The ALJ then concluded that Claimant's

14

impairments could produce some of his alleged symptoms, but the objective evidence evidenced that his limitations were not as severe as he asserted in his testimony.  (Id. at 17).

In this case, the ALJ neglected to discuss in any detail Claimant's medical records – either physical or psychological – but, instead, summarized in a few paragraphs his reasons for rejecting the opinions of the treating physicians and adopting the consulting examiner's evaluations, without mentioning several of Claimant's ailments.  (AR 16-19; see Section B).  Thus, the ALJ's statement that Claimant's subjective testimony was not credible does not satisfy the requirements of this Circuit's caselaw because the ALJ did not discuss the supporting objective or adequately explain what portions of Claimant's testimony lacked credibility and the reasons for his findings.  Nor is there any indication that ALJ's decision to discount Claimanat's testimony was based on discrepancies between his testimony and the medical records and opinions, Claimant's daily activities, or frequency of pain.  See Light, 119 F.3d at 792; Lester, 81 F.3d at 835; Bunnell, 947 F.2d at 346.  Moreover, the ALJ provides insufficient explanations to enable a reviewing court to assess whether the ALJ's decision was based on the proper application of law and sufficient evidence.  Mersman v. Halter, 161 F. Supp. 2d at 1086; SSR 96-7p.

The Court concludes that the ALJ did not provide clear and convincing reasons for discounting Claimant's subjective complaints of pain and limitation to the extent alleged, and that the ALJ's reasons were not supported by substantial evidence in the record and were not sufficiently specific to allow this Court to conclude that the ALJ rejected Claimant's testimony on permissible grounds and did not arbitrarily discredit Claimant's testimony.  Accordingly, Claimant's credibility should be reconsidered on remand.

Third Party Questionnaire

Claimant contends that the ALJ erred when he rejected his subjective complaints as not credible, without considering "documentary representations" completed by Claimant and his niece.  (Doc. 20, p. 7).  Claimant completed two "Daily Activity Questionnaires," and his responses generally confirm his ailments as reported in his medical records, and both confirm and contradict his testimony.  (AR 82-87, 100-105).  Claimant's niece, Eesai See, also completed a questionnaire.  (AR 106-111).  Ms. See lived with Claimant and his family, and, therefore, her responses likely are based on first-hand knowledge.  (See AR 64, 106).  Ms. See's responses are almost identical to Claimant's answers.  (See AR 82-87,

1    100-105, 106-111).

2         The Commissioner's regulations state that, in addition to medical sources, "we may also use

3    evidence from other sources to show the severity of your impairment(s) and how it affects your ability

4    to work.  Other sources include . . . spouses, parents and other caregivers, siblings, other relatives,

5    friends, neighbors, and clergy."  20 C.F.R. § 404.1513(d)(4).  As is evident, the regulation itself does

6    not impose an absolute rule.  Rather, as stated in Smolen, 80 F.3d at 1288, lay evidence is considered

7    when, for example, "medical records are sparse and do not provide adequate documentation of []

8    symptoms."  Moreover, it is settled that an ALJ "need not discuss *all* evidence presented to her.  Rather,

9    she must explain why 'significant probative evidence has been rejected.'" Vincent v. Heckler, 739 F.2d

10   1393, 1394-1395 (9th Cir. 1984) (emphasis in original)(upholding ALJ's decision even where ALJ failed

11   to discuss testimony of two lay witnesses and one medical witness). See Parks v. Sullivan, 766 F. Supp.

12   627, 635 (N.D. Ill. 1991)("the ALJ does not need to meet the impossible burden of mentioning *every*

13   piece of evidence")(emphasis in original).

14        Here, Claimant's medical records were fairly complete and provided documentation of his

15   serious impairments, although they did not address every alleged ailment and/or symptom reported in

16   the questionnaires.  The medical records were not referenced and discussed by the ALJ in his written

17   decision.  (AR 16-19).  However, given the numerous responses that contradict Claimant's testimony,

18   e.g., he attends church twice monthly, watches television, leaves the house three times per month, and

19   does not drive (AR 84, 102, 108-109), it would not have helped Claimant if the ALJ had elected to

20   discuss the questionnaires.  Because, once the ALJ develops Claimant's mental health history, there will

21   be sufficient medical evidence upon which he can make a decision without relying on the questionnaires,

22   the Court finds that the ALJ did not err in failing to discuss the questionnaires in determining Claimant's

23   subjective credibility, but leaves it to the ALJ's discretion on remand whether to consider them when

24   rendering his new decision.  See 20 C.F.R. § 404.1513(d)(4) (granting ALJ discretion to consider lay

25   evidence).

26        **D.   Vocational Record and Vocational Expert**

27        Claimant's final assertion is that the ALJ erroneously concluded that he could return to

28   dishwasher job after determining that none of the limitations imposed on him, such as exposure to

16

pulmonary irritants, existed in that type of work. (Doc. 20, pp. 7-8). Claimant contends that, because there were limitations on his ability to bend and stoop, and his previous job would expose him to pulmonary irritants, he could not perform the full range of medium work and, thus, the testimony of a vocational expert ("VE") was required. (Id.). The undersigned agrees.

Pursuant to SSR 96-8p, once the ALJ makes a finding as to the Claimant's RFC, it is critical at step four that he determines whether the Claimant

> can still do past relevant work as he or she *actually* performed it because individual jobs within an occupational category . . . may not entail all of the requirements of the exertional level indication for that category in the *Dictionary of Occupational Titles*.

SSR 96-8p (emphasis in original). Pursuant to Orn, the ALJ must comply with the applicable Social Security Rulings, regulations, and law when making a finding or rendering a decision. Orn v. Astrue, ___ F.3d ___, 2007 WL 2034287 (9th Cir 2007).

In the instant case, the ALJ's determination of Claimant's RFC was derived from the evaluation by examining consultant Tomas Rios, who opined that Claimant could lift and carry fifty pounds occasionally, twenty-five pounds frequently, would have difficulty frequently stooping and bending, and should avoid concentrated exposure to pulmonary irritants. (AR 17-18, 164-165). In his SSI paperwork, Claimant explained that his dishwasher/busboy job required that he washed dishes in a machine all day, pushed a cart back and forward, took out the trash, stooped (bent down and forward at waist) seven hours each day, and both frequently and occasionally carried fifty pounds. (AR 67, 80). The ALJ concluded that Claimant could perform this past relevant work because, as Claimant described it, he had no restrictions that would prevent him from returning to that job. (AR 18-19). Clearly, however, Claimant could not bend and stoop seven hours a day and frequently lift fifty pounds. (AR 17-18, 164-165). Thus, he could not perform his past relevant work as he actually had done in light of his RFC, and the ALJ erred in finding, at step four, that he could return to his dishwasher/busboy job. SSR 96-8p.

On remand, the ALJ also will have to reconsider whether Claimant can return to his past relevant work or whether the sequential evaluation will proceed to step five and call a VE to testify.

## CONCLUSION AND RECOMMENDATIONS

For the reasons discussed above, this Court finds that the ALJ erred in each issue addressed. This Court further finds that the ALJ's decision is not supported by substantial evidence in the record as a

whole or based on proper legal standards.  Accordingly, this Court RECOMMENDS:

    1. Plaintiff's social security complaint BE GRANTED, and

    2. The matter BE REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with ths report and recommendation, of Plaintiff's residual functional capacity, in conjunction with the opinion of his treating physicians; whether Plaintiff is capable of returning to his past relevant work; as well as to further develop the record with respect to Plaintiff's mental health and provide adequate, substantial reasons for rejecting Plaintiff's testimony, and

    3. Judgment BE ENTERED for Plaintiff Saeng See and against Defendant Michael J. Astrue.

    These Findings and Recommendations are submitted to the United States District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  No later than fifteen (15) days after service of these Findings and Recommendations, any party may file written objections to these  Findings and Recommendations with the Court and serve a copy on all parties and the Magistrate Judge and otherwise in compliance with this Court's Local Rule 72-304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings  and Recommendations." Responses to objections shall be filed and served no later than fifteen (15) days after filing of the objections and otherwise in compliance with this Court's Local Rule 72-304(d). A copy of the responses shall be served on the Magistrate Judge.  The District Judge will review the Findings and Recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 10, 2007**　　　　　　　　　　　　**/s/ Theresa A. Goldner**
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE